UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| C.H. Robinson Worldwide, Inc., | Case No. 0:22-cv-0469 (JRT/TNL) |
| Plaintiff, | |
| v. | **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS** |
| Alexandria International, Inc., d/b/a Alexandria Floors, | |
| Defendant. | |

## INTRODUCTION

Defendant Alexandria International, Inc. d/b/a Alexandria Floors ("Alexandria") submits this Memorandum in opposition to the Motion to Dismiss filed by Plaintiff C.H. Robinson Worldwide, Inc. ("CHRW"). Alexandria properly pled alternative counterclaims against CHRW; breach of contract and negligence. CHRW's breach of its contractual, in the alternative duties as a third arranger of transportation services, caused Alexandria to incur substantial and unnecessary demurrage fees, over which Alexandria had no control. CRHW demanded additional compensation that was not part of the contract. Alexandria, under duress, paid some of it. CRHW breached its contract with Alexandria. Additionally, Alexandria properly pled negligence in the alternative as the record is insufficient at this very early stage of the litigation to determine whether the obligations or the manner in which CHRW provided its services arises from the Service Agreement or tort. Thus, Alexandria's counterclaims are properly pled. CHRW's Motion to Dismiss must be denied in its entirety.

**STATEMENT OF FACTS**

**I.   THE PARTIES ENTER INTO A SERVICES AGREEMENT.**

Alexandria is a seller of carpet and flooring based in Adairsville, Georgia. (ECF 1-1 at 8.) CHRW is a global transportation and logistics company that held itself out to be an expert in the field of ocean shipping. (ECF 1-1 ¶ 1; ECF 5 ¶ 30.) Moreover, CHRW held itself out to others and to Alexandria that it offered competitive rates through its major ocean shipping alliances, that it was competent in addressing fluctuating market demand and this it was, or employed, ocean freight experts. (ECF 5 ¶¶ 30-31.) CHRW claimed to offer the right ocean service for short timelines and tight budgets while analyzing customer's freight characteristics and current market conditions to assist its customers in improving customer's strategy. (ECF 5 ¶¶ 32-33.) Plaintiff also claimed expertise in tailoring the movement of a customer's goods for maximum speed to move a customer's freight reliably and cost effectively. (ECF 5 ¶ 34.)

Alexandria was then induced by CHRW's representations to enter into a business arrangement, consisting of CHRW providing transportation services of Alexandria's cargo, which mostly comprised of textile carpets, from locations in Eastern Europe and the Middle East to the Port of Savannah, Georgia. (ECF 5 ¶ 35.) On or around January 6, 2021, Alexandria submitted a U.S. Based Global Forwarding Credit Application to CHRW for the purpose of entering into a Terms and Conditions of Services Agreement ("Service Agreement") with CHRW. (ECF 1-1 at 8-9.) CHRW provided written rate quotations to Alexandria for all shipments at issue in this matter, none of which provided Alexandria any

notice that Alexandria would incur any excess or excessive demurrage damages. (ECF 5 ¶ 36.) Alexandria accepted such quotes for all shipments at issue in this matter. (ECF 5 ¶ 37.)

The Service Agreement provided that CHRW, as Alexandria's agent, would perform "duties in connection with the entry and release of goods, post entry services, the securing of export licenses, the filing of expert and security documentation on behalf of [Alexandria] and the other dealing with Government Agencies." (ECF 1-1 at 9, § 2.) The Service Agreement was silent as to the standard of those duties and the manner in which the cargo would be handled. Alexandria agreed to pay CHRW in return for its services in accordance with the written rate quotations accepted by Alexandria. (ECF 1-1 at 9 § 19; ECF 5 ¶ 47; Hutter Decl. ¶ 2, Ex. A.) The rate quotations did not contain demurrage fee rates or quotes. (Hutter Decl. ¶ 2, Ex. A.) The rate quotations did include additional terms. (Hutter Decl. ¶ 2, Ex. A.) One term read:

> Any terminal demurrage charges are for the account of cargo and are subject to the local ocean carrier and terminals' terms and conditions. The customer will be responsible to pay any and all charges and assume the liability.

(Hutter Decl. ¶ 2, Ex. A, at 6 ¶ 12.)

The Service Agreement also contains a narrow contractual limitations provision that requires Alexandria to give CHRW written notice of any potential claim involving actual or potential loss within 90 days after the event giving rise to the claim:

> 3.  Limitations of Actions.
>     (a)   Unless subject to a specific statute or international convention, all claims against the Company for a **potential or actual loss** must be made in writing and received by the Company, within ninety (90) days of the event

{12039976.1}                                3

>giving rise to claim. The failure to give the Company timely notice shall be a complete defense to any suit or action commenced by Customer.

(ECF 1-1 at 9, § 3 (emphasis added).) Finally, the contract is governed by Minnesota law. (ECF 1-1 at 9, § 22.)

## II. THE PROLONGED AND COSTLY TRANSPORTATION OF ALEXANDRIA'S GOODS.

While the cargo containers that held Alexandria's goods lingered at the Port of Savanah, Georgia ("Savanah Port"), CHRW ignored notifications from inbound ocean-going carriers that Alexandria's goods were available to pick up. (ECF 5 ¶ 38.) As a direct result of CHRW ignoring such notifications, the cargo containers containing Alexandria goods frequently languished at the Savanah Port incurring daily and substantial demurrage (storage) charges. (*Id.*) Once CHRW eventually retrieved the containers with Alexandria's goods, CHRW failed to act with due diligence and reasonable dispatch in delivering Alexandria's cargo and returning the ocean-going container and the chassis used to transport the container from the port. (ECF 5 ¶ 39.) As a direct result of the dilatory and commercially unreasonable actions of CHRW, Alexandria incurred substantial and unnecessary use charges for the containers and chassis. (ECF 5 ¶ 40.) Further, as a result of such dilatory and unreasonably slow actions in moving Alexandria's goods from the Savanah Port to Alexandria's location in Calhoun, Georgia, Alexandria incurred additional expenses for demurrage, container and chassis fees in an amount excess of $150,000.00 which it paid to CHRW under duress of threatened delays or detention of Alexandria's cargo yet to be delivered. (ECF 5 ¶ 41.)

CHRW's lack of timelines and diligence caused a substantial number of Alexandria's clients to cancel orders for products being imported through CHRW's services or forcing Alexandria to offer steep discounts at the cost of profits to those customers or other customers, the amount of which is estimated to exceed $50,000.00. (ECF 5 ¶ 42.) CHRW then invoiced Alexandria for its services and for the unreasonable demurrage charges it unnecessarily caused and sent Alexandria a statement of its unpaid account. (ECF 1-1 at 11-14.)

### III. PLAINTIFF COMMENCES SUIT AGAINST ALEXANDRIA AND ALEXANDRIA COUNTER CLAIMS.

On or around February 1, 2022, CHRW commenced a lawsuit against Alexandria in Carver County District Court for breach of contract, account stated, and unjust enrichment. (ECF 1-1 at 4.) Alexandria then removed the action to this Court and denied CHRW's clams and asserted counterclaims against Plaintiff for breach of contract and, in the alternative, negligence, which are the claims at issue in CHRW's Motion to Dismiss. (ECF 5 ¶¶ 6-8.) CHRW's Motion to Dismiss should be denied in its entirety.

### ARGUMENT

### I. STANDARD FOR MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp.* 550 U.S. at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556. In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted).

## II. ALEXANDRIA PROPERLY PLEAD THAT CHRW BREACHED THE SERVICE AGREEMENT.

There is no dispute that a Service Agreement exists between Alexandria and CHRW. Alexandria has sufficiently plead that CHRW breached the Service Agreement causing it substantial financial harm. CHRW contends that it is entitled to a complete defense based upon the language of the Service Agreement, and in the alternative, that the claim fails to the extent that it relies on alleged implicit agreements. First, the prelitigation notice requirement in the Service Agreement that CHRW relies upon does not apply to the circumstance that gives rise to Alexandria's claims. Second, Alexandria properly pled a breach of contract counterclaim for CHRW's demand for additional compensation, which was not quoted in the Service Agreement. Finally, CHRW breached the implied duty of good faith and fair dealing that is implicit in every contract under Minnesota law. Alexandria's breach of contract counterclaim was properly plead. Therefore, CHRW's motion to dismiss should be denied.

### A. The Service Agreement's Limitations Provision Does Not Apply to Alexandria's Claims and Are Therefore Not Barred.

CHRW argues that Section 3 of the Service Agreement's Terms and Conditions imposes a pre-litigation notice requirement that applies to the instant matter. The clause reads, in pertinent part:

> 3. Limitations of Actions.
> (a) Unless subject to a specific statute or international convention, all claims against the Company for a **potential or actual loss** must be made in writing and received by the Company, within ninety (90) days of the event giving rise to claim. The failure to give the Company timely notice shall be a complete defense to any suit or action commenced by Customer.

(ECF 1-1 at 9, § 3 (emphasis added).)

Under this provision, Alexandria would have been required to give CHRW written notice of its claims within 90 days after the event giving rise to the claims. However, the provision refers to "potential or actual loss" which give rise to the claim against CHRW. Here, Alexandria is claiming that CHRW itself caused Alexandria to incur unnecessary demurrage charges. Alexandria is not claiming that it suffered a potential or actual loss of its goods or cargo while in transit with CHRW. Therefore, this provision does not apply to the instant matter and as such, Alexandria's claims against CHRW are not barred under the Service Agreement.

"[W]here the language [of a contract] is ambiguous, resort may be had to extrinsic evidence, and construction then becomes a question of fact for the jury, unless such evidence is conclusive. . . . A contract is ambiguous if it is susceptible to more than one meaning." *Bari v. Control Data Corp.*, 439 N.W.2d 44, 47 (*citing Clapp v. Haferman Water Conditioning, Inc.*, 380 N.W.2d 838, 842 (Minn. Ct. App. 1986)).

Further, if it is disputed as to whether the Service Agreement provision applies to the instant matter based upon the language therein, then the Service Agreement is susceptible to more than one meaning. The word "loss" is not defined in the Service Agreement. (ECF 1-1 at 9, § 1.) Indeed, "loss" does not apply in this matter because "loss" pertains to the casualty of goods or cargo in transit. Here, the claims arise from the unnecessary demurrage fees that CHRW caused Alexandria to incur, which has nothing to do with the status of Alexandria's goods. If the language of the Service Agreement is found to be ambiguous, the Parties are therefore entitled to resort to extrinsic evidence as construction of the Service Agreement has become a question of fact. *See Bari*, 439 N.W.2d at 47. As such, CHRW's Motion to Dismiss is premature and should therefore be denied so that the Parties can retain additional evidence to support their interpretations of the Service Agreement.

### B. Alexandria Properly Plead a Breach of Contract Counterclaim for CHRW's Demanded Additional Compensation.

Alexandria and CHRW entered into the Service Agreement, where Alexandria agreed to pay CHRW agreed upon rates in exchange for CHRW to perform duties in connection with the entry and release of goods. CHRW breached the Services Agreement by demanding additional compensation from Alexandria for which CHRW performed no additional agreed upon services. CHRW's breached caused Alexandria significant demurrage charges

To plead a breach-of-contract claim under Minnesota law, the plaintiff must allege that (1) an agreement was formed, (2) the plaintiff performed any conditions precedent to

the plaintiff's demand of performance by the defendant, and (3) the defendant breached the contract. *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co*., 848 N.W.2d 539, 543 (Minn. 2014). "In deciding a motion to dismiss, the court may consider the entire written contract when the complaint refers to the contract and the contract is central to the claims alleged." *In re Hennepin Cty. 1986 Recycling Bond Litig*., 540 N.W.2d 494, 497 (Minn. 1995). A court may review documents referenced in the complaint. *See Martens v. Minn. Mining & Mfg. Co*., 616 N.W.2d 732, 739, n.7 (Minn. 2000). "Separate writings as part of the same transaction must be construed together." *Wm Lindeke Land Co. v. Kalman*, 252 N.W. 650, 652 (Minn. 1934). It is not required that the separate instruments reference each other. *Id.* at 653.

Here, the transaction between Alexandria and CHRW includes CHRW performing duties in connection with the entry and release of Alexandria's goods in exchange for Alexandria's payment to CHRW. The transaction encompasses two writings including the Terms and Conditions of Services and the rate quotation provided to and agreed by Alexandria. The two instruments therefore must be construed together as the Service Agreement setting forth the terms of the transaction. (*See* ECF 1-1 at 9; Hutter Decl. ¶ 2, Ex. A.) Alexandria agreed to the rate quotation provided by CHRW, which did not include demurrage charges or rates. CHRW then demanded additional compensation for items that were not included in its rate quotation. In fact, Alexandria overpaid for services provided by CHRW which exceed the written rate quotation and did so under duress. This overpayment caused Alexandria substantial damages. Alexandria properly pled a breach of contract counterclaim against CHRW.

### C. CHRW Breached the Service Agreement's Implied Duty of Good Faith and Fair Dealing.

CHRW contends that the untimely, unprofessional, and not commercially reasonable characterization of its services are insufficient to state an implied covenant claim without additional evidence of subjective bad faith. This argument is misplaced. CHRW controlled and had discretionary power over Alexandria's cargo during transit, acted unreasonably by causing Alexandria to incur demurrage charges, and did so by not exercising good faith in exercising this discretionary power over the term of the contract. CHRW breached the implied duty of good faith and fair dealing. CHRW further appears to disagree that this implied covenant imposes an obligation to handle Alexandria's cargo in a commercially reasonable manner. CHRW's Motion to Dismiss should be denied.

Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not "unjustifiably hinder" the other party's performance of the contract. *In re Hennepin Cty*, 540 N.W.2d at 503. "Good faith performance of a contract includes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *White Stone Partners, LP v. Piper Jaffray Co., Inc.*, 978 F. Supp. 878, 881 (D. Minn. 1997). Minnesota courts have recognized the breach of duty of good faith and fair dealing where a party does not use good faith in exercising an unlimited discretionary power over a term of the contract. *Id.* at 882.

Here, as does every contract under Minnesota law, the Service Agreement includes an implied covenant of good faith and fair dealing. The agreed upon common purpose of

the Service Agreement was for CHRW to perform duties connected with the shipping and handling of Alexandria's goods.  It should be no surprise that Alexandria's justified expectation of CHRW was that these duties would be carried out in a timely, professional, and commercially reasonable manner to save both time and costs for each party. CHRW had control of and access to Alexandria's cargo, thus whether Alexandria would incur terminal demurrage charges is entirely in the control and discretion of CHRW.  CHRW breached the implied duty of good faith and fair dealing by ignoring notifications from inbound ocean-going carriers that Alexandria's cargo containers were available at the Savannah Port, causing Alexandria to incur substantial demurrage charges of which it had no control or say. Further, CHRW continued to engage in dilatory and unreasonably slow actions in moving Alexandria's goods from the Port of Savannah to Alexandria's location in Calhoun, Georgia, causing Alexandria to incur additional expenses for demurrage, container, and chassis.

> The terms attached to the rate quotation include the following:
>
>> Any terminal demurrage charges are for the account of cargo and are subject to the local ocean carrier and terminals' terms and conditions.  The customer will be responsible to pay any and all charges and assume the liability.

(Hutter Decl. ¶ 2, Ex. A, at 6 ¶ 12.)  CHRW had control of and access to Alexandria's cargo as it was acting as Alexandria's agent during the transport and handling of its cargo.  (*See* ECF 1-1 at 9, § 2.)  Indeed, CHRW had complete discretionary power over these two terms of the contract, and because CHRW acted in a commercially unreasonable manner in the handling of Alexandria's cargo, Alexandria incurred substantial and unnecessary

demurrage fees over which it had no control. Nowhere in the rate quotation did it account for *excessive* demurrage charges. CHRW appears to dispute the implied covenant imposes the obligation to handle Alexandria's cargo in a commercially reasonable manner. Alexandria contends that it does. If the implied covenant does so, then CHRW breached the implied covenant of good faith and fair dealing in the Service Agreement. However, it is premature to ascertain from where the obligations and the standard of care arises. As such, CHRW's Motion to Dismiss should be dismissed.

### III. ALEXANDRIA PROPERLY PLED ITS NEGLIGENCE COUNTERCLAIM IN THE ALTERNATIVE.

CHRW argues that Alexandria's negligence counterclaim should be dismissed because it violates Minnesota's independent-duty rule. This argument is misplaced. The Service Agreement is silent as to the obligations in which CHRW is to carry out its duties in connection with the entry and release of goods. Thus, it is premature to determine where the obligation of the duty of care arises – whether it's a contractual obligation or a common law obligation. Therefore, CHRW's Motion to Dismiss should be denied.

In general, a plaintiff may pursue "two legal remedies for the same wrongful conduct," but there can be no double recovery. *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 379 (Minn. 1990). "An independent tort may accompany a breach of contract when the defendant has a legal duty to the plaintiff arising separately from any duty imposed in the contract." *Toyota-Lift of Minn., Inc. v. Am. Warehouse Sys., LLC*, 868 N.W.2d 689, 696 (Minn. Ct. App. 2015), aff'd, 886 N.W.2d 208 (Minn. 2016).

In *Keiper v. Anderson*, the court denied two separate motions to dismiss because though the action was based on a contract and was therefore an action on contract, the court held that the complaint stated a cause of action to recover damages for tenant's death as caused by negligent acts of defendants. *Keiper v. Anderson*, 165 N.W. 237 (Minn. 1917). The court noted that "[t]here may be a breach of a contract without negligence, but there may be negligence or wrongful acts or omissions in the performance of a contract." *Id.* at 239.

Here, Alexandria alleges that CHRW owes Alexandria a duty in its handling and transport of its goods and cargo. At this juncture, however, from where the duty arises is unclear. The Service Agreement is silent as to any duty or obligations in the handling of Alexandria's goods and would require extrinsic evidence to ascertain the intent of the Parties to determine the obligations therein. On the other hand, if the Parties determine that no obligations are imposed under the Service Agreement, then common law duties are imposed on CHRW. *Toyota-Lift of Minn., Inc.*, 868 N.W.2d at 696. Regardless, it is premature to determine where the obligation arises. As such, CHRW's Motion to Dismiss should be dismissed.

## IV. THE MOTION TO DISMISS IS PREMATURE BEFORE DISCOVERY BECAUSE THE PARTIES MUST ASCERTAIN WHETHER THE SERVICE AGREEMENT IMPOSES A STANDARD OF CARE.

As previously discussed, CHRW's Motion to Dismiss is premature as the Parties have not yet engaged in discovery to determine whether the Service Agreement obligates CHRW to engage in a certain standard of conduct. Therefore, CHRW's Motion to Dismiss should be denied as premature.

A motion to dismiss may be premature when discovery is necessary to determine whether claims are proper. *See In re Nat'l Hockey League Players' Concussion Injury Litig.,* 189 F.Supp.3d 856, 880 (D. Minn. 2016); *see also Murrell v. Zimmer, Inc.*, 2010 WL 1050309, at *3 (D. Minn. Mar. 18, 2010); *see also First Nat'l Bank (Fulda) v. Am. Lenders Facility, Inc.*, 2001 WL 1640128, at *2 (D. Minn. Sept. 25, 2001).

Here, CHRW's Motion to Dismiss is premature. Discovery is necessary to create a factual record to determine whether CHRW had a standard of care in handling Alexandria's cargo under the Service Agreement. If it does not, then the standard of care is imposed on CHRW under common law duties. Thus, Alexandria's alternative counterclaim of negligence would grant the relief it seeks. Therefore, CHRW's Motion to Dismiss should be denied.

## **CONCLUSION**

For the reasons cited above, Alexandria respectfully requests that Plaintiff's Motion to Dismiss be denied in its entirety.

Respectfully Submitted,

DATE: April 12, 2022                /s/Michael C. Glover
Plaintiff's Counsel
Michael C. Glover (#185401)
Michael J. Pfau (#0402787)
DeWitt LLP
901 Marquette Avenue, Ste. 2100
Minneapolis, MN  55402
Telephone: (612) 305-1400
mglover@dewittllp.com
mjp@dewittllp.com