UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| C.H. Robinson Worldwide, Inc., | Case No. 0:22-cv-0469 (JRT/TNL) |
| Plaintiff, | |
| v. | **PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIMS** |
| Alexandria International, Inc., d/b/a Alexandria Floors, | |
| Defendant. | |

Plaintiff C.H. Robinson Worldwide, Inc. ("CHRW") submits this Reply in support of its Motion to Dismiss Defendant Alexandria International, Inc., d/b/a Alexandria Floors' ("Alexandria") Counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT

**I.  BOTH OF ALEXANDRIA'S COUNTERCLAIMS ALLEGE "LOSSES" SUBJECT TO THE AGREEMENT'S LIMITATIONS PROVISION, AND BOTH COUNTERCLAIMS MUST THEREFORE BE DISMISSED.**

To save its counterclaims, Alexandria argues that the contractual limitations provision in Section 3 of the Terms and Conditions of Service Agreement (the "Agreement") does not bar its claims against CHRW. But Alexandria's counterclaims allege "losses" covered by Section 3's plain language. Because Alexandria does not dispute that it failed to satisfy Section 3's notice requirement, both of its counterclaims should be dismissed with prejudice.

Under Minnesota law, "[t]he primary goal of contract interpretation is to determine and enforce the intent of the parties." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). When interpreting a contract, a court first considers the language of the contract. *Id.*

When determining whether a contract is unambiguous, courts "must give contract language its plain and ordinary meaning." *Current Tech. Concepts v. Irie Enters.*, 530 N.W.2d 539, 543 (Minn. 1995) (citation omitted). "A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation." *Winthrop Res. Corp. v. Sabert Corp.*, 567 F. Supp. 2d 1084, 1091 (D. Minn. 2008). When interpreting contractual language, "[t]he sense of a word depends on how it is being used; only if more than one meaning applies within that context does ambiguity arise." *Amco Ins. Co. v. Dorpinghaus*, No. 05-1296 (PJS/JJG), 2007 U.S. Dist. LEXIS 2440 *11 (D. Minn. Jan. 11, 2007) (citation omitted).

When a contract's language is clear and unambiguous, "[courts] enforce the agreement of the parties as expressed in the language of the contract." *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010). "[W]hile extrinsic evidence may be admissible to clarify ambiguous terms in a written contract, it is not admissible to vary terms whose meaning is plain." *Core & Main, LP v. McCabe*, No. 21-cv-1512 (WMW/LIB), 2021 U.S. Dist. LEXIS 247348, *8-9 (D. Minn. Dec. 29, 2021) (quoting *Hayle Floor Covering, Inc. v. First Minnesota Constr. Co.*, 253 N.W.2d 809, 812 (Minn. 1977)).

Here, when the word "loss" in the Agreement's Section 3 is given its plain meaning, it unambiguously applies to Alexandria's counterclaims. The Merriam-Webster Dictionary defines "loss" as "the harm or privation resulting from losing or being separated from someone or something." *Loss*, Merriam-Webster Dictionary, *available at* www.merriam-webster.com/dictionary/loss (last visited April 25, 2022). Section 3 bars any claim Alexandria might make against CHRW for a "potential or actual loss" if Alexandria failed to give CHRW notice of the claim within 90 days of the event causing the loss:

> 3.  Limitations of Actions.
> (a)  Unless subject to a specific statute or international convention, **all claims against the Company for a potential or actual loss must be made in writing and received by the Company, within ninety (90) days of the event giving rise to claim**. The failure to give the Company timely notice shall be a complete defense to any suit or action commenced by Customer.

(ECF 1-1 at 9, Sec. 3 (emphasis added).)

Alexandria does not argue that it gave CHRW notice of its claims under Section 3. Alexandria also does not dispute that its counterclaims seek monetary damages for alleged losses, which it specifically describes as "lost profits and lost future business" (ECF 5, Pl.'s Answer & Counterclaims ¶ 42), "lost sales," and "lost customers." (*Id.* ¶¶ 52, 57.)

Instead, Alexandria effectively asks the Court to exempt its claims from Section 3 by inserting limiting language not found in its text. According to Alexandria, Section 3 does not bar its counterclaims because it only applies to claims for a "potential or actual loss *of its goods or cargo while in transit* with CHRW." (ECF 18, Def.'s Opp. at 7

3

(emphasis added).)  In other words, Alexandria argues that Section 3 applies only to *certain* kinds of losses, but not the losses it alleges here.

Alexandria's argument fails because it disregards Section 3's plain language. Section 3 does not state or suggest in any way that its notice requirement is limited to claims regarding the loss of goods or cargo.  Rather, Section 3's language is expansive; it expressly states that it applies to "*all claims against the Company* . . . ." (ECF 1-1 at 9, Sec. 3 (emphasis added).)   While the Agreement does not define the term "loss," "ambiguity does not exist simply because a contract requires interpretation or fails to define a term."  *Ellering v. Sellstate Realty Sys. Network*, No. 10-1025 (RHK-RLE), 2010 U.S. Dist. LEXIS 163069, *13 (D. Minn. Jul. 19, 2010) (quoting *Siedle v. Nat'l Ass'n of Securities Dealers, Inc.*, 248 F. Supp. 2d 1140, 1144 (N.D. Fla. 2002).  From the plain text of the Agreement, there is no basis to conclude that Alexandria's counterclaims are exempt from the notice requirement of Section 3.

Alexandria also cites the parties' dispute over Section 3's meaning as evidence of its alleged ambiguity. (ECF 18, Def.'s Opp. at 8.)  But "[t]he mere fact that the parties may disagree as to the proper interpretation of a contract's language does not mean the contract is ambiguous or that the parties' intent cannot be discerned from the four corners of the agreement itself." *Esanbock v. Weyerhaeuser Co.*, No. 17-cv-3702 (SRN/DTS), 367 F. Supp. 3d 925, 937 (D. Minn. Jul. 30, 2018), *report and recommendation adopted,* 2019 U.S. Dist. LEXIS 105 (Jan. 2, 2019).  Section 3 is unambiguous, and Alexandria's claim to the contrary should not stop the Court from straightforwardly applying it to Alexandria's counterclaims.

For these reasons, Alexandria's counterclaims are barred under Section 3, and they should be dismissed with prejudice.

II. **ALEXANDRIA'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT, AS ALEXANDRIA ADMITS, THE DEMURRAGE CHARGES PROVISION WAS BINDING ON THE PARTIES.**

Alexandria also contends CHRW breached the Agreement by charging Alexandria for "demurrage charges" incurred by CHRW, which Alexandria characterizes as "additional compensation . . . for which CHRW performed no additional agreed upon services." (ECF 18, Def.'s Opp. at 8.) But the contract contains a provision that made Alexandria responsible for demurrage charges, and as a result CHRW did not breach the contract by passing those charges along to Alexandria.

Based on Alexandria's Opposition, there is no dispute between the parties about the makeup of the relevant contract. As Alexandria admits, both the Agreement and the rate quotation spreadsheet were part of the parties' contract:

> The transaction encompasses two writings including the Terms and Conditions of Services and the rate quotation provided to and agreed [to] by Alexandria. **The two instruments therefore must be construed together as the Service Agreement setting forth the terms of the transaction.**

(*Id*. at 9 (emphasis added).)

Importantly, the rate quotation spreadsheet contains four tabs, and Alexandria does not dispute that all four tabs are part of the parties' contract. This is significant, because Paragraph 12 in the fourth tab of the spreadsheet includes additional contract terms and conditions, including an express term providing that Alexandria would be responsible for terminal demurrage charges:

5

12.    Any terminal demurrage charges are for the account of cargo and are subject to the local ocean carrier and terminals' terms and conditions. **The customer will be responsible to pay any and all charges and assumes the liability**.

(ECF 14-1, Hutter Decl. ¶ 2, Ex. A at 6.) (emphasis added).)

Alexandria does not dispute that this demurrage charges provision is part of the parties' contract. On the contrary, Alexandria cites the provision in its Opposition, calling it one of the "terms attached to the rate quotation." (ECF 18, Def.'s Opp. at 11.)

Tellingly, Alexandria offers no explanation why its agreement "to pay any and all charges" is insufficient on its own to create a contractual duty to pay those charges. If, as Alexandria admits, the demurrage charges provision is part of the parties' contract, then Alexandria was required to comply with it. By passing along its demurrage charges to Alexandria under Paragraph 12 of the rate quotation spreadsheet's terms and conditions, CHRW did not breach the contract, and Alexandria's breach of contract counterclaim should therefore be dismissed.

### III. ALEXANDRIA HAS NOT ASSERTED A COUNTERCLAIM AGAINST CHRW FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

Alexandria's Answer & Counterclaim asserts counterclaims for breach of contract and negligence. (ECF 5, Answer & Counterclaim at 4-9.) Now, in opposition to CHRW's Motion to Dismiss, Alexandria argues that CHRW breached the implied covenant of good faith and fair dealing. (ECF 18, Def.'s Opp. at 10.) But Alexandria has not asserted an implied covenant claim against CHRW in this case, and for the reasons explained in CHRW's Memorandum, Alexandria's allegations would not sustain such a claim against CHRW even if it had asserted one. (ECF 13, Pl.'s Mem. at 6-8.)

Furthermore, other than the implied covenant of good faith and fair dealing, Alexandria has not identified any "implied" term in the parties' contract.

For these reasons, any implied covenant claim or breach of contract claim by Alexandria based on "implied" duties or terms in the parties' contract should be dismissed with prejudice.

### IV. ALEXANDRIA'S NEGLIGENCE CLAIM IS BARRED BY THE INDEPENDENT-DUTY RULE.

Finally, Alexandria does not dispute CHRW's contention that, under the independent-duty rule, "[w]hen a contract defines a relationship between two parties, a plaintiff is not entitled to recover tort damages save for exceptional cases in which a breach of contract 'constitutes or is accompanied by an independent tort.'" *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 994 (D. Minn. Nov. 9, 2006) (quoting *Wild v. Rarig*, 234 N.W.2d 775, 789-90 (Minn. 1975)). Nor does it disagree with CHRW's assertion that the duty that supports a negligence claim, "must arise from something other than a contract" and must arise from "a relationship . . . which would give rise to the legal duty without enforcement of the contract promise itself." *U.S. Bank Nat'l Assoc., v. San Antonio Cash Network*, 252 F. Supp. 3d 714, 718 (D. Minn. May 17, 2017) (citations omitted).

Rather, it attempts to evade the independent-duty rule, by arguing that, because the parties' contract is "silent" as to CHRW's obligations, it is "premature" to determine whether CHRW's alleged duty of care to Alexandria was "a contractual obligation or a common law obligation." (ECF 18, Def.'s Opp. at 12.) Alexandria also "alleges that

7

CHRW owes Alexandria a duty in its handling and transport of its goods and cargo," but it admits that the source of that alleged duty "is unclear." (*Id.* at 13.) As a result, Alexandria claims it should have the opportunity to collect "extrinsic evidence to ascertain the intent of the Parties" in discovery. (*Id.* at 13-14.)

These arguments are misguided, and they have been dismissed by courts in this District in other cases. When a court is analyzing a negligence claim under Minnesota law, the "[e]xistence of a duty is a question of law." *Berger v. Nationstar Mortg. LLC*, 118 F. Supp. 3d 1121, 1125 (D. Minn. Jul. 15, 2015) (quoting *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001)). Because the existence of a duty is a legal question, this Court does not need to wait until after the parties have engaged in discovery to determine that CHRW had no independent duty of care to Alexandria. *Id.* at 1126 (dismissing a negligence claim on Rule 12 motion under the independent-duty rule based on a determination that the defendant "did not have an independent duty of reasonable care" to the plaintiff).

In fact, courts in this District regularly dismiss tort claims at the pleading stage based on the independent-duty rule. *See id.; see also U.S. Bank Nat'l Assoc.*, 252 F. Supp. 3d at 720 (ruling that the plaintiff's "negligence claim fails as a matter of law" based on the independent-duty rule); *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, No. 11-2717 (JRT/AJB), 2012 U.S. Dist. LEXIS 103217, *2 (D. Minn. Jul. 25, 2012) (Tunheim, J.) (dismissing a gross negligence claim on a Rule 12 motion because it was "merely a breach-of-contract claim masquerading as a tort claim . . . .")

In addition, Alexandria cannot save its negligence claim by claiming it is an acceptable alternative claim under Rule 8(a)(3) of the Federal Rules of Civil Procedure. While it is true that a plaintiff may plead alternative theories of recovery, each of a plaintiff's alternative theories is subject to Rule 12's plausibility standard. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, Alexandria's negligence claim is problematic not because it is an alternative to Plaintiff's breach of contract claim, but because it fails to identify any duty that CHRW owed Alexandria outside of the parties' contract. As a result, it fails to state a claim for which relief may be granted. *See U.S. Bank Nat'l Assoc*, 252 F. Supp. 3d at 718-20. Like the gross negligence claim in *TCF Nat'l Bank*, Alexandria's negligence claim is "merely a breach-of-contract claim masquerading as a tort claim . . . ." *TCF Nat'l Bank*, No. 11-2717 (JRT/AJB), 2012 U.S. Dist. LEXIS 103217, *2 (Tunheim, J.)

For these reasons, Alexandria's negligence counterclaim should be dismissed with prejudice.

## **CONCLUSION**

For the reasons set forth above, CHRW respectfully requests that both of Alexandria's counterclaims be dismissed with prejudice.

|  |  |
|---|---|
|  | **FAFINSKI MARK & JOHNSON, P.A.** |
| Dated: April 26, 2022 | s/ Patrick J. Rooney |
|  | Patrick J. Rooney (#0198274) |
|  | Bradley R. Hutter (#0396531) |
|  | Flagship Corporate Center |
|  | 775 Prairie Center Drive, Suite 400 |
|  | Eden Prairie, MN  55344 |
|  | (952) 224-7273 |
|  | *patrick.rooney@fmjlaw.com* |
|  | *bradley.hutter@fmjlaw.com* |
|  |  |
|  | Timothy W. Fafinski (#201947) |
|  | Corporate Counsel PA |
|  | 3411 Brei Kessel RD |
|  | Independence, MN  55359 |
|  | (952) 944-9500 |
|  | *timf@ccpalaw.net* |
|  |  |
|  | *Attorneys for Plaintiff C.H. Robinson Worldwide, Inc.* |