UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

CH ROBINSON WORLDWIDE, INC.,

                Plaintiff,

v.

ALEXANDRIA INTERNATIONAL, INC.,

                Defendant.

Civil No. 22-469 (JRT/TNL)

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

---

Bradley Richard Hutter and Patrick J. Rooney, **FAFINSKI MARK & JOHNSON, PA**, 775 Prairie Center Drive, Suite 400, Eden Prairie, MN 55344; Timothy W Fafinski, **CORPORATE COUNSEL, PA**, 3411 Brei Kessel Road, Independence, MN 55359, for plaintiff.

Jason E. Engkjer and Michael Clark Glover, **DEWITT LLP**, 901 Marquette Avenue, Suite 2100, Minneapolis, MN 55402, for defendant.

In 2021, Plaintiff CH Robinson Worldwide ("CHRW") and Defendant Alexandria International ("Alexandria") entered into a Terms and Conditions of Service Agreement (the "Agreement") whereby CHRW agreed to provide transportation services to Alexandria. CHRW initiated this action against Alexandria seeking payment for those transportation services rendered in 2021. The case was removed to federal court and Alexandria asserted three counterclaims against CHRW—breach of contract, breach of

the implied covenant of good faith and fair dealing[1], and negligence.  CHRW now moves to dismiss Alexandria's Counterclaims.

Because the language of the Agreement's Limitations Provision is ambiguous, the Court cannot hold, on a motion to dismiss, that the provision bars Alexandria from asserting its counterclaims.  Furthermore, the Court will deny CHRW's motion to dismiss the breach of contract claim because the language of Section 2 of the Agreement is ambiguous, and the Court cannot determine, at this stage, whether a breach occurred.  As to the breach of the implied covenant of good faith and fair dealing, because it is plausible that CHRW acted in subjective bad faith in performing its duties under the contract, the Court will deny CHRW's motion to dismiss this counterclaim.  Lastly, because it is unclear whether CHRW owes a common-law duty to Alexandria in addition to its contractual duty, the Court will deny CHRW's motion to dismiss Alexandria's negligence

---

[1] Although Alexandria did not explicitly plead a claim for breach of the implied covenant of good faith and fair dealing, Alexandria's allegations are enough to give CHRW fair notice of such a claim against it.  Further, because the implied covenant of good faith and fair dealing claim arises from the same facts and occurrences giving rise to Alexandria's breach of contract claim, Alexandria need not plead these claims independently. *See Gulf Ins. Co. v. Skyline Displays, Inc.*, No. 02-3503, 2003 U.S. Dist. LEXIS 26509, at *11–13 (D. Minn. Apr. 22, 2003) (holding that if a breach of the implied covenant of good faith and fair dealing claim arises from the same facts and occurrences that give rise to breach of contract claims, the plaintiff need not plead them separately); Fed. R. Civ. P. 8 (a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (stating that the plaintiff is only required to make a "short and plain statement of the claim showing that the pleader is entitled to relief" and give a defendant fair notice of the claim and the grounds upon which it rests).

counterclaim. In sum, the Court will deny CHRW's Motion to Dismiss Alexandria's Counterclaims in its entirety.

## BACKGROUND

**I.    FACTUAL BACKGROUND**

CHRW is a global transportation and logistics company headquartered in Eden Prairie, Minnesota. (Notice Removal, Ex. 1 ("Complaint") ¶ 1, Feb. 21, 2022, Docket No. 1-1.) Alexandria is a seller of carpet and flooring based in Adairsville, Georgia. (Compl., Ex. A.)

On or around January 6, 2021, Alexandria entered into the Agreement with CHRW. (*Id*.) CHRW agreed to provide transportation services for Alexandria's cargo, mostly textile carpets, importing them from eastern Europe and the Middle East. (Def.'s Ans. & Countercls. ¶ 35, Mar. 1, 2022, Docket No. 5.) Specifically, CHRW promised to "act as an agent of [Alexandria] for the purpose of performing duties in connection with the entry and release of goods, post entry services, the securing of export licenses, the filing of expert and security documentation on behalf of [Alexandria]," and other dealings with the Government. (Compl., Ex. A at § 2.) In exchange, Alexandria agreed to pay CHRW the rates set forth in the Rate Quotes exchanged by the parties. (Compl., Ex. A; Def.'s Ans. & Countercls. ¶¶ 36–37; Decl. Bradley Hutter, Ex. A ("Rate Quotes"), Mar. 22, 2022, Docket No. 14.) Both parties agree that the Agreement and the Rates Quotes together constitute the binding contract between the parties. Additionally, the Rate Quotes explicitly stated

that "[Alexandria] will be responsible to pay any and all [demurrage] charges." (Hutter Decl., Ex. A at 6.)

The Agreement also contained restrictions on when and how Alexandria could assert certain claims against CHRW. Section 3 of the Agreement, also known as the Limitations Provision, states:

> Unless subject to a specific statute or international convention, all claims against [CHRW] for a potential or actual loss must be made in writing and received by [CHRW] within ninety (90) days of the event giving rise to claim. The failure to give [CHRW] timely notice shall be a complete defense to any suit or action commenced by [Alexandria].

(Compl. ¶ 9.)

Per the Agreement, CHRW provided logistics-related services between July 30, 2021 and December 29, 2021 to Alexandria at the agreed upon price set forth in the Rate Quotes. (Compl., Ex. B.)

Alexandria alleges that over the course of their relationship, CHRW ignored notifications from inbound ocean-going carriers that Alexandria's goods were available for pick up. (Def's Ans. & Countercls. ¶ 38.) Alexandria also claims that CHRW failed to act with due diligence and reasonable dispatch in delivering Alexandria's goods, causing substantial and unnecessary use charges for containers and chassis. (*Id.* ¶¶ 39–40.) As a result, Alexandria's goods languished at the Savannah Port, incurring demurrage, container, and chassis fees in the amount of $150,000. (*Id.* ¶¶ 38—40.) Alexandria claims it paid these fees to CHRW under duress of threatened delays or detention of Alexandria's

-4-

yet to be delivered cargo. (*Id.* ¶ 41.) Alexandria alleges that CHRW's lack of timeliness and diligence caused clients to cancel orders or required Alexandria to offer steep discounts. (*Id.* ¶ 42.)

In addition to the $150,000 Alexandria already paid to CHRW, CHRW sent Alexandria a statement of its unpaid account, invoicing Alexandria for services provided and demurrage charges incurred. (Compl., Ex. B.) Alexandria has failed to pay the invoices. (Compl. ¶¶ 5–7.) CHRW then initiated this lawsuit to collect.

## II.  PROCEDURAL HISTORY

CHRW commenced this lawsuit on February 1, 2022 against Alexandria in Carver County District Court for breach of contract, account stated, and unjust enrichment. (Compl. at 4.) Alexandria removed this action to federal court, denied CHRW's claims, and asserted breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence counterclaims against CHRW. (Def.'s Ans. & Countercls. ¶¶ 1, 30–57.) CHRW has now filed a Motion to Dismiss Defendant's Counterclaims. (Mot. Dismiss Def.'s Countercls., Mar. 22, 2022, Docket No. 10.)

## DISCUSSION

## I.  STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588

F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.    ANALYSIS

### A.    The Agreement's Limitations Provision

CHRW argues that the Court must dismiss all of Alexandria's counterclaims because Section 3 of the Agreement, the Limitations Provision, provides for a pre-litigation notice requirement. Under the provision, Alexandria is required to give CHRW written notice of its claims for a "potential or actual loss" within 90 days of the event giving rise to the claim. (Compl., Ex. A.) Failure to give notice is a complete defense in any suit or action commenced by Alexandria. (*Id.*) The events underlying Alexandria's

claims took place between July 30, 2021 and December 29, 2021 but Alexandria failed to provide any written notice of the claims until it filed its counterclaims in March 2022. Thus, CHRW asserts that it has a complete defense to Alexandria's counterclaims mandating a dismissal.[2]

When determining whether a contract is unambiguous, courts "must give contract language its plain and ordinary meaning." *Current Tech. Concepts v. Irie Enters.*, 530 N.W.2d 539, 543 (Minn. 1995). "A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation." *Winthrop Res. Corp. v. Sabert Corp.*, 567 F. Supp. 2d 1084, 1091 (D. Minn. 2008). Ambiguity does not exist simply because the parties may disagree as to the proper interpretation of a contract's language. *Esanbock v. Weyerhaeuser Co.*, 367 F. Supp. 3d 925, 937 (D. Minn. July 30, 2018).

Alexandria argues that the term "loss" does not include the damages it incurred here so it did not need to notify CHRW. At the very least, Alexandria asserts that "loss" is ambiguous. The Agreement does not define the term "loss." Based upon the plain language alone, it is not clear whether the term "loss" would be limited to potential or actual loss of cargo, as Alexandria claims. It is also unclear whether loss would include a claim for overpayment of demurrage fees, which constitutes a substantial portion of the

---

[2] At oral argument, Alexandria pointed out that some of its claims would fall within the 90-day window as the latest date that CHRW provided services to Alexandria was December 29, 2021, and Alexandria filed its counterclaims in March 2022. As such, Alexandria argues that Section 3 may preclude some of its claims, but not all. Because the Court finds the Limitations Provision ambiguous on its face, the Court need not reach the issue of timing.

damages sought by Alexandria. The relationship between the parties, custom in this area, and other extrinsic evidence is necessary to determine the meaning of "loss" within the confines of the contract. Absent this evidence, interpreting "loss" to be limited to the "loss" of cargo, as Alexandria does, is reasonable. Because Alexandria's interpretation of the term "loss"—that it is limited to potential or actual loss of cargo and therefore does not apply to the damages sought herein—is reasonable, the Court finds the Limitations Provision to be ambiguous at this point in the litigation. Thus, the Court cannot hold on a motion to dismiss that the Limitations Provision is a complete defense to the counterclaims.[3]

### B.   Alexandria's Breach of Contract Claim

Alexandria claims that CHRW breached the Agreement because CHRW demanded additional compensation, in the form of additional demurrage charges, for which CHRW performed no services. Specifically, Alexandria argues that CHRW agreed to act as its agent and because CHRW knowingly incurred demurrage fees and took no action to prevent the fees from accruing, it was in breach. CHRW asserts that it was not a breach of contract when it passed along those demurrage fees to Alexandria because a term of the Rate Quotes explicitly passes on liability for demurrage fees to Alexandria.

---

[3] This conclusion is not to say that CHRW is precluded from raising a similar argument in the future once factual development makes clear the true meaning of "loss."

To plead a breach of contract claim, the plaintiff must allege that (1) an agreement was formed; (2) the plaintiff performed any conditions precedent to the plaintiff's demand of performance by the defendant; and (3) the defendant breached the contract. *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).

As the Court understands it, Alexandria bases its breach of contract claim on Section 2 of the Agreement. Section 2 is titled "Company as agent" and states the following: "[CHRW] acts as the agent of [Alexandria] for the purpose of performing duties in connection with the entry and release of goods, post entry services, the securing of export licenses, the filing of export and security documentation on behalf of [Alexandria]." (Compl., Ex. A.) Alexandria agrees that the Rate Quotes required that any demurrage fees were to be passed along to them, but argues that this does not mean Alexandria cannot recover those fees if they were knowingly incurred by CHRW in breach of the contract. Alexandria asserts that CHRW breached the contract when it knowingly incurred demurrage fees after receiving notifications that Alexandria's shipment was at the port. By ignoring these notifications or not acting diligently or reasonably in transporting Alexandria's goods, Alexandria asserts that CHRW breached its contractual agreement to act as its agent.

Whether CHRW acted reasonably in its role as agent, what expectations existed between the parties as to how CHRW would act as agent for Alexandria, and importantly, what happened during the shipment of Alexandria's goods are all facts that will need to

be developed in this litigation. On this motion to dismiss, however, Alexandria has shown, resolving all inferences in its favor, that it is plausible that CHRW breached Section 2 of their Agreement. As such, Alexandria's breach of contract counterclaim survives a motion to dismiss.

### C.     Alexandria's Implied Covenant of Good Faith and Fair Dealing Claim

Alexandria claims that CHRW implicitly agreed to perform its obligations under the Agreement in a timely and commercially reasonable manner. Alexandria further alleges that CHRW breached the implied covenant of good faith and fair dealing by acting unreasonably in causing demurrage charges and did not exercise good faith when carrying out discretionary power, resulting in "lost sales, lost customers and lost profits" in an amount exceeding $50,000. While Alexandria did not explicitly list a separate claim for a breach of the implied covenant of good faith and fair dealing, as discussed above, the Complaint sufficiently placed CHRW on notice of this claim.

The implied covenant of good faith and fair dealing requires that one party not "unjustifiably hinder" the other party's performance of the contract. *In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502–03 (Minn. 1995). The covenant may also be breached if one party acts "dishonestly, maliciously, or otherwise in subjective bad faith." *BP Prods. N. Am., Inc. v. Twin Cities Stores, Inc.*, 534 F. Supp. 2d 959, 968 (D. Minn. 2007).

It is plausible that CHRW acted in subjective bad faith when it ignored notifications to pick up Alexandria's cargo or when it was unreasonably slow in delivering Alexandria's shipments. Alexandria need only prove plausibility at this stage. *Braden*, 588 F.3d at 594. As such, the Court will deny CHRW's motion to dismiss the breach of the implied covenant of good faith and fair dealing claim.

### D.   Alexandria's Negligence Claim

CHRW contends that Alexandria's negligence claim should be dismissed based on Minnesota's independent-duty rule. Under the independent-duty rule, a party to a contract "does not have a cause of action for negligent breach of a contractual duty." *Berger v. Nationstar Mortg. LLC*, 118 F. Supp. 3d 1121, 1125 (D. Minn. 2015). A party cannot recover tort damages when a contract defines the relationship of the parties except when the breach of contract "constitutes or is accompanied by an independent tort." *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 994 (D. Minn. 2006). Put differently, the duty supporting a negligence claim "must arise from something other than a contract" such that a legal duty would arise without enforcement of the contract promise itself. *U.S. Bank Nat'l Assoc., v. San Antonio Cash Network*, 252 F. Supp. 3d 714, 718 (D. Minn. 2017).

It is not clear to the Court that, as CHRW asserts, the only duty it owed to Alexandria arose from the contract. While this could certainly be the case, the Court cannot hold as a matter of law that the negligence claim is barred under the independent

duty rule when the confines of the negligence claim have not been definitively determined. Alexandria has plausibly alleged that CHRW may have owed it a separate duty under common law such as the duty of a common carrier or the duty of an agent to its principle. *See, e.g.*, *Power v. Siats*, 70 N.W.2d 344, 350 n.9 (Minn. 1955) (holding that a common carrier undertakes the transportation of property and may be liable to the owner of such property for any damages that occur while in transit); *Klawitter v. Billick*, 242 N.W.2d 588, 592 (Minn. 1976) (holding that an agent has the duty to be loyal to the principle's interests). Consequently, the Court will deny CHRW's motion to dismiss the negligence claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss [Docket No. 10] is **DENIED**.

DATED:  September 2, 2022
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
District Judge
United States District Court